UNITED STATES of America,
Appellee,

v.

Bruce Clifford **PALMER**, Appellant.

No. 71–1847.

United States Court of Appeals,
Ninth Circuit.

April 3, 1972.

Martha Goldin (argued) of Saltzman
& Goldin, Hollywood, Cal., for appellant.

Andrew R. Willing, Asst. U. S. Atty. (argued), Eric A. Nobles, Asst. U. S. Atty., Robert L. Meyer, U. S. Atty., Los Angeles, Cal., for appellee.

Before HAMLEY, WRIGHT and CHOY, Circuit Judges.

PER CURIAM:

Bruce C. Palmer appeals from his conviction, after a trial without a jury, for having been found in the United States without the express consent of the Attorney General after having been deported to Canada on March 12, 1968, in violation of 8 U.S.C. § 1326. We affirm.

Palmer is an alien, a citizen of Canada. He was the subject of a deportation hearing on January 19, 1967, at which time he was represented by counsel. The charge then under consideration was that he had been admitted as a non-immigrant visitor for pleasure who thereafter became gainfully employed in violation of the terms of his admission. At this hearing Palmer did not contest his deportability and he was ordered deported to Canada. Voluntary departure was denied. Palmer took no administrative appeal and on January 30, 1967, a warrant of deportation was executed.

Palmer thereafter reëntered the United States without permission. He was then made the subject of a second deportation hearing on February 27, 1968. He was again represented by counsel. The charge pressed at this second hearing was that, being a previously deported alien, he had reëntered the United States without the consent of the Attorney General. At this second hearing Palmer admitted the described charges and did not contest his deportability. The special inquiry officer sustained the charges and ordered deportation. Palmer's counsel explicitly waived an administrative appeal. He was deported to Canada on March 12, 1968.

On February 15, 1970, Palmer again entered the United States without the permission of the Attorney General. He was found at Los Angeles, California, on January 4, 1971, on which date he was arrested. Palmer was then indicted under 8 U.S.C. § 1326.

■ On appeal, Palmer first argues that the 1968 deportation order is invalid because he is the father of United States citizen children and was therefore entitled to the benefit of the amelioratory provisions of 8 U.S.C. § 1251(f).[1]

■ Palmer's first child was born in Santa Monica, California, on August 18, 1966. Palmer was therefore the parent of a United States citizen at the time he was deported to Canada on March 12, 1968. But this child, and the child's mother went to Canada before Palmer was deported to Canada in 1967, and was still there at the time of the instant criminal trial in February and March, 1971. The Congressional intent in enacting section 1251(f) was to unite families and preserve family ties. Immigration and Naturalization Service v. Errico, 385 U.S. 214, 220, 87 S.Ct. 473, 17 L.Ed.2d 318 (1966). In view of the circumstances described above, Palmer's entry into the United States following his 1967 deportation did not serve that Congressional purpose but directly subverted it by separating him from his child and wife then in Canada. In this context we think that section 1251(f) does not provide a basis for determining that the 1968 deportation order is invalid.

■ Palmer also asserts, on appeal, that he is now the common law husband of an American citizen woman who, at the time of trial, was six months preg-

---

1. Section 1251(f) reads:

"The provisions of this section relating to the deportation of aliens within the United States on the ground that they were excludable at the time of entry as aliens who have sought to procure, or have procured visas or other documentation, or entry into the United States by fraud or misrepresentation shall not apply to an alien otherwise admissible at the time of entry who is the spouse, parent, or a child of a United States citizen or of an alien lawfully admitted for permanent residence."

nant with his child. He further states that the child, a boy, was born "approximately" six months before Palmer filed his opening appeal brief on October 8, 1971.

There is nothing in the record concerning this child. Moreover, according to his own assertions, this child was not born until 1971, and could therefore have had no effect upon the validity of the 1968 deportation order.[2]

■ Palmer next urges that his 1970 entry into the United States was coerced, and therefore involuntary, because he did so only upon the urging of his attorney that he must enter and give a deposition in a civil suit, or face "financial ruin."

The attorney in question testified that when he requested Palmer to come to the United States to give a deposition he did not know that Palmer had been deported. Palmer did not tell this attorney of the deportation until he returned to California. The deposition was originally scheduled to be taken in March, 1970, but was not taken until November of that year. During a portion of this period the attorney could not find Palmer and had an investigator looking for him. After the deposition was taken in November, 1970, Palmer remained in the United States, where he was arrested on January 4, 1971.

The facts recited above tend to undermine the factual basis for Palmer's argument. But even if the trial judge accepted Palmer's contention that he reëntered the United States in 1970 to avoid a grievous financial loss, this would not constitute the compulsion or duress which would excuse criminal conduct.

Fear of harm to property is not enough. In order for compulsion or duress to provide such a defense, it must be such as to induce a well-founded fear of immediate great bodily harm or death. D'Aquino v. United States, 192 F.2d 338, 358 (9th Cir. 1951); *see also* Phillips v. United States, 334 F.2d 589, 590–591 (9th Cir. 1964).

■ Finally, Palmer argues, he should be granted a new trial because evidence was obtained against him in violation of his right to counsel. For the most part this argument is based upon the asserted fact that in neither of the two deportation proceedings, at which times he was represented by counsel, was he advised that he had a defense against the deportation charge. The short answer is that he did not have a defense.

■ The remaining ground for this argument pertains to an interview on January 6, 1971, which Robert Mitton of the United States Immigration and Naturalization Service had with Palmer. At that time Mitton read to Palmer a warning of *Miranda* rights, after which Palmer signed a waiver. Mitton testified that Palmer then stated that he had been informed at both deportation hearings that returning to the United States without first obtaining permission from the Attorney General would make him subject to prosecution. Since this testimony was relatively innocuous we do not believe this point has enough substance to warrant further discussion. Palmer's guilt did not depend upon a showing that he knew he was not to reënter without permission.

Affirmed.

2. In view of our stated conclusions concerning the two Palmer children, we need not consider the Government's further contentions that: (1) Palmer may not, even as a defense in this criminal proceeding, collaterally attack the 1968 *deportation order as to* which Palmer did not exhaust his administrative remedies. (*But see* United States v. Osuna-Picos, 319 F.Supp. 558, 560 (S.D.Cal.1970)), reversed 443 F.2d 907 (9th Cir. 1971); and (2) section 1251 (f) provides no relief because Palmer was "qualitatively" ineligible for admission, and thus not "otherwise admissible" under section 1251(f), because Palmer had previously been convicted of a crime involving moral turpitude (8 U.S.C. § 1182(a) (9)), and because he was an alien who had been previously arrested and deported. (8 U.S.C. § 1182 (a) (17)).