993 F.2d 886
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Jildardo RIVERA-ARRIOLA, Defendant-Appellant.
 No. 91-10087.
 United States Court of Appeals, Ninth Circuit.
 May 7, 1993.
 
 Before FLETCHER, WIGGINS and KOZINSKI, Circuit Judges.
 
 
 1
 MEMORANDUM*
 
 
 2
 Appellant Jildardo Rivera-Arriola challenges his conviction under 8 U.S.C. § 1326 (1988) for reentering the United States after being deported. He contends that the Supreme Court's decision in United States v. Mendoza-Lopez, 481 U.S. 828 (1987), bars his conviction because he was denied judicial review of his earlier deportation order. We have jurisdiction over his appeal pursuant to 28 U.S.C. § 1291 (1988).
 
 I.
 
 3
 The United States deported the appellant to Mexico on December 20, 1989.[1] On March 7, 1990, an Immigration and Naturalization (INS) agent found him in California. He was subsequently indicted for violating 8 U.S.C. § 1326 (1988), which provides that "any alien who (1) has been arrested and deported ... and thereafter (2) enters, attempts to enter, or is at any time found in, the United States ... shall be fined under Title 18, or imprisoned not more than 2 years, or both."
 
 
 4
 A jury trial was held on November 27, 1990, at which the appellant contested neither his status as an alien nor the fact that he had reentered the United States after being deported. The jury accordingly found him guilty of violating section 1326. On February 6, 1991, the district court imposed a sentence of two years in custody followed by a year of supervised release, a special condition of which was that the appellant not reenter the country.
 
 
 5
 The appellant contends that he was denied direct judicial review of his deportation proceedings. Further, he contends that the Supreme Court's decision in Mendoza-Lopez allows a collateral attack on those proceedings in the context of his section 1326 prosecution, and would prevent the Government from using the fact of his deportation to support his conviction were he able to show that he was denied review of that deportation. Because the district court did not allow him to present an attack of this defense, he concludes we should remand this case for a new trial.
 
 II.
 
 6
 In Mendoza-Lopez, the Supreme Court considered whether an individual prosecuted under section 1326 for reentering the country after being deported can call into question the fundamental fairness of her deportation proceedings. The Court held that Section 1326 does not contemplate this sort of collateral attack, but that the constitutional requirements of due process preclude the straightforward utilization of an administrative determination to support the imposition of a criminal penalty where that determination was not subject to some form of judicial review. Thus the Court declared that "where the defects in an administrative proceeding foreclose judicial review of that proceeding, an alternative means of obtaining judicial review must be made available before the administrative order may be used to establish conclusively an element of a criminal offense." Id. at 838.
 
 
 7
 The Court did not make entirely clear, however, the form of judicial review it thought necessary in situations where an individual has been denied direct review of her deportation order. At several points, the Court indicated that a district court entertaining a section 1326 prosecution under such circumstances should itself review the deportation proceeding, presumably to ensure that it complied with the fundamental requisites of due process. The Court stated, for example, that "[d]epriving an alien of the right to have the disposition in a deportation hearing reviewed in a judicial forum requires, at a minimum, that review be made available in any subsequent proceeding in which the result of the deportation proceeding is used to establish an element of a criminal offense." Id. at 839.
 
 
 8
 At other points, however, the Court seemed to suggest that where a court concludes that judicial review of a prior deportation order was denied an alien, it should simply bar the use of that order as the predicate to a criminal conviction under section 1326. The Court thus summarized its decision as "holding that, at a minimum, the result of an administrative proceeding may not be used as a conclusive element of a criminal offense where the judicial review that legitimated such a practice in the first instance has effectively been denied." Id. at 838 n. 15. And it noted that for purposes of the present opinion it would not "enumerate which procedural errors are so fundamental that they may functionally deprive the alien of judicial review, requiring that the result of the hearing in which they took place not be used to support a criminal conviction." Id. at 839 n. 17.[2]
 
 
 9
 Our circuit now has shed at least some light on what a defendant who seeks to exclude evidence of a deportation order in a prosecution under 8 U.S.C. § 1326 must show. United States v. Proa-Tovar, 975 F.2d 592 (9th Cir.1992) (en banc). In addition to showing that he has been deprived of a right, he must show some prejudice. The court recognized however, "as did the Court, that there may well be times when the administrative proceedings were so flawed that effective judicial review will be foreclosed. No doubt there will be instances when the very lack of an appeal from the IJ to the Board of Immigration Appeals and thence to the courts will preclude the exercise of discretionary authority that might have prevented the deportation itself. See Santos-Vanegas, 878 F.2d at 251-52." Id. at 11092.
 
 
 10
 We cannot determine on the record before us whether the appellant was in fact deprived of the opportunity for judicial review of his deportation hearings or whether the administrative proceedings were so flawed that effective judicial review is foreclosed, nor can we determine whether defendant suffered prejudice. The appellant did not make any argument concerning the alleged unfairness of those hearings until quite late in the course of the trial below.[3] The district court, furthermore, never passed on such an argument.[4]
 
 
 11
 The appellant introduced evidence at trial which certainly raises doubts as to whether his deportation order can serve as a predicate to a section 1326 conviction. He testified, for example, that despite his limited understanding of English he was not provided with an interpreter at the administrative hearing, and that he signed a deportation order without understanding its consequences. These assertions, if properly supported, could lead to the conclusion that the appellant's deportation proceedings were so inherently unfair as to preclude any form of effective judicial review. See Id., Villa-Fabela, 882 F.2d at 434; Tejeda-Mata v. INS, 626 F.2d 721, 726 (9th Cir.1980) ("[T]his court and others have repeatedly recognized the importance of an interpreter to the fundamental fairness of [a deportation] hearing if the alien cannot speak English fluently.")
 
 
 12
 The record is not very complete as to such assertions, however, and the government noted below that if the district court intended to rule on the propriety of the appellant's deportation proceedings, it would introduce significant testimony on the subject. Under these circumstances, a remand to the district court to assess the fairness of the proceedings would appear appropriate. The district court can at the same time, if necessary, ascertain the circumstances surrounding the appellant's waiver of his right to appeal the outcome of his administrative determination. If the court finds that the waiver was not knowing or otherwise invalid, it must further determine whether there was prejudice. See United States v. Gonzalez-Mendoza, No. 92-50390 (9th Cir. Feb. 8, 1993), slip op. 1035.
 
 
 13
 We disagree with the appellant's contention that this assessment of his deportation proceedings should be conducted by a jury rather than a judge. We have repeatedly held that the question of whether the conviction of a criminal defendant is barred by the principles of due process is one of law for a court to decide. See, e.g., United States v. Sotelo-Murillo, 887 F.2d 176, 182 (9th Cir.1989) ("Whether the government's conduct is sufficiently outrageous to violate due process is a question of law reviewed de novo. It is not an issue for the jury and [the defendant] was not entitled to a jury instruction on this issue.") (citation omitted); United States v. Prairie, 572 F.2d 1316, 1319 (9th Cir.1978) ("[The defendant] also argues that the trial court erred in refusing to give a requested instruction which would have placed the due process defense before the jury. We recently stated [that] '[t]he question of whether the agents' actions were a violation of due process was one of law, and properly determined by the district court.' ") (quoting United States v. Gonzales, 539 F.2d 1238, 1240 n. 1. (9th Cir.1976)). Resolution of this issue does not require an inquiry into the guilt or innocence of the defendant and thus does not implicate the jury's traditional role as the finder of fact. See Guam v. Teixeira, 859 F.2d 120, 121-23 (9th Cir.1988).
 
 
 14
 Accordingly, we remand for further proceedings. If the district court determines that evidence of the deportation order must be excluded it is directed to vacate its judgment of conviction and to enter a judgment of acquittal.
 
 
 15
 REMANDED.
 
 
 
 *
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit Rule 34-4
 
 
 [1]
 The appellant had previously been deported to Mexico on August 11, 1989. That deportation is not at issue in the present case because the United States charged the appellant only with reentering the country after being deported in December of 1989
 
 
 [2]
 Once the Mendoza-Lopez Court concluded that the defendants before it had been denied judicial review of their deportation proceedings, it simply affirmed the dismissal of their indictments. Little can be gleaned from this fact, however, because the United States had asked the Court to assume that the defendants' deportation proceedings had been conducted in a fundamentally unfair manner
 
 
 [3]
 The appellant did not run afoul of Federal Rule of Criminal Procedure 12(b), however, in failing to challenge the validity of the deportation proceedings prior to trial. The rule provides that "[a]ny defense, objection, or request which is capable of determination without the trial of the general issue may be raised before trial by motion." It then lists a number of challenges which must be raised before the commencement of trial. These include "[d]efenses and objections based on defects in the institution of the prosecution" (Rule 12(b)(1)) and "[d]efenses and objections based on defects in the institution of the prosecution" (Rule 12(b)(1)) and "[d]efenses and objections based on defects in the indictment or information" (Rule 12(b)(2)). In United States v. Smith, 866 F.2d 1092 (9th Cir.1989), we made it clear that "[t]he defenses for which pre-trial assertion is mandatory [under Rule 12(b)(1) and (b)(2) ] ... go to matters of form rather than substance that usually are apparent on the face of the pleading." Id. at 1095. We determined that Rule 12(b)(1) mandates pre-trial challenges "to defects in the procedures leading up to [an] indictment, because this type of defect can be cured by the prosecutor prior to trial." Id. at 1098. Thus, objections to prosecutorial irregularity in obtaining an indictment must be raised before trial. Rule 12(b)(2), for its part, "encompasses technical defects in the indictment or information." Id. at 1097. Neither clause applies, therefore, to substantive challenges of the sort embodied in a section 1326 defendant's collateral attack on a prior deportation proceeding. The other matters which Rule 12 requires to be raised before trial bear no possible relation to this sort of collateral attack
 
 
 [4]
 The United States asserts that the district court did, in fact, determine that the appellant's deportation proceedings were fundamentally fair when it denied the appellant's second motion, pursuant to Rule 29 of the Federal Rules of Criminal Procedure, for the entry of a judgment of acquittal. The appellant premised his motion, however, on the argument that the United States had failed to show that he possessed a specific intent to violate section 1326 when he returned to the country. The district court denied the motion on the grounds that our decisions in United States v. Palmer, 458 F.2d 663 (9th Cir.1972) and Pena-Cabanillas v. United States, 394 F.2d 785 (9th Cir.1968), establish that the United States does not have to demonstrate specific intent as an element of a section 1326 offense. We find no indication that in reaching this conclusion the district court made any determination as to the fundamental fairness of the appellant's deportation proceedings