**UNITED STATES of America, Plaintiff–Appellee,**

v.

**Jose Manuel LEON–LEON, Defendant–Appellant.**

**No. 93–10162.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted May 13, 1994.

Decided Sept. 16, 1994.

Francisco Leon, Tucson, AZ, for defendant-appellant.

Joseph Koehler, Asst. U.S. Atty., Tucson, AZ, for plaintiff-appellee.

Before: FERGUSON, NOONAN, and T.G. NELSON, Circuit Judges.

Opinion by Judge T.G. NELSON; Dissent by Judge FERGUSON.

T.G. NELSON, Circuit Judge:

## I.

### Overview

Jose Manuel Leon–Leon (Leon–Leon) reentered the United States after being deported and, as a result, was convicted of violating 8 U.S.C. § 1326. He appeals the district court's decision that the deportation order could be used to prove an element of § 1326. He also appeals the district court's exclusion of evidence regarding his reasonable belief that he had permission to reenter the United States. We affirm.

## II.

### Facts and Procedural History

On November 29, 1985, Leon–Leon, a citizen of Mexico, was admitted to the United States as a permanent resident alien. On August 10, 1986, he was convicted of transporting marijuana, an aggravated felony. Pursuant to this conviction, Leon–Leon was deported to Mexico in September 1988. After his deportation, Leon–Leon made no application to the Immigration & Naturalization Service (INS) for any kind of status adjustment.

On June 9, 1992, Leon–Leon reentered the United States. The next day, he was apprehended in Douglas, Arizona, during the execution of a search warrant at the home of his ex-wife. On October 21, 1992, a superseding indictment was filed charging Leon–Leon with illegal reentry following deportation pursuant to an aggravated felony conviction in violation of 8 U.S.C. § 1326(b)(2).[1] Leon–Leon entered a plea of not guilty.

Prior to trial, Leon–Leon moved to dismiss the indictment, collaterally challenging the validity of the 1988 deportation order. The order was issued pursuant to a deportation hearing which had been conducted by telephone with the Immigration Judge (IJ) presiding in Phoenix while Leon–Leon and his attorney, Fernando Gaxiola (Gaxiola), were at the INS office in Tucson. An interpreter was provided during the hearing. She asked Leon–Leon in Spanish whether his name was Jose Manuel Leon–Leon, whether he understood Spanish, and whether Gaxiola was his attorney. Leon–Leon responded affirmatively to each of these questions. Thereafter, the IJ asked Gaxiola, in English, whether Leon–Leon waived the seven day rule with respect to the hearing, admission of service of the order to show cause, the reading of any rights and explanations required by regulation, and the reading of the order to show cause; whether Leon–Leon admitted the factual allegations; and whether he conceded Mexico was the country of deportation. Gaxiola answered affirmatively to this single, compound question which was not translated into Spanish for Leon–Leon. The district court denied Leon–Leon's motion to dismiss the indictment based on his challenge to the validity of this telephonic hearing, holding that Leon–Leon had failed to show prejudice.

Also prior to trial, the Government moved to exclude from evidence any testimony regarding Leon–Leon's possession of an I–551 Permanent Resident Alien card (green card). At the time of his reentry into the United States, Leon–Leon was in possession of a green card which had been issued on November 29, 1985, the date of his initial, legal entry into the United States. Leon–Leon sought to admit evidence of the green card to establish that he reasonably believed he had been granted permission to reenter the United States. Apparently, Leon–Leon hoped to have his ex-wife testify that the INS had contacted her and requested that she pick up Leon–Leon's green card, and after doing so, she consulted with Gaxiola who advised her the card was valid. The district court granted the prosecution's motion thereby excluding evidence of Leon–Leon's possession of the green card.

The case proceeded to trial, and a jury convicted Leon–Leon. He was sentenced to a term of 51 months with 36 months of supervised release. Leon–Leon appeals the district court's denial of his motion to dismiss the indictment and grant of the prosecution's motion *in limine* to exclude evidence of the green card.

### III.

### *Discussion*

### A.  *1988 Deportation Hearing*

Whether the defects in an underlying deportation procedure invalidated the proceeding for use in a criminal proceeding is a mixed question of law and fact which we review *de novo.* *United States v. Proa–Tovar,* 975 F.2d 592, 594 (9th Cir.1992) (en banc).

---

1.  Section 1326 provides in part:
    Subject to subsection (b), any alien who—
        (1) has been arrested and deported or excluded and deported, and thereafter
        (2) enters, attempts to enter, or is at any time found in, the United States unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously excluded and deported, unless such alien shall establish that

he was not required to obtain such advance consent under this or any prior Act, shall be fined under title 18, United States Code, or imprisoned not more than 2 years or both.
(b) Notwithstanding subsection (a), in the case of any alien described in such subsection—
    . . . .
    (2) whose deportation was subsequent to a conviction for commission of an aggravated felony, such alien shall be fined under such title, imprisoned not more than 15 years, or both.
8 U.S.C. § 1326 (Supp.1993).

■ Leon–Leon collaterally attacks his 1988 deportation hearing arguing that he was deprived of his Fifth Amendment due process rights because the IJ abused his discretion by not requiring translation of important portions of the deportation hearing.[2] Consequently, Leon–Leon argues that the deportation order could not be used to prove an element of § 1326 and that the district court should have dismissed the indictment.

■ The Supreme Court, in *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), held that an alien must be permitted to collaterally challenge a deportation order which is to be used as an element of a criminal offense. *See id.* at 839, 107 S.Ct. at 2155–56. Further, it held that where a deportation proceeding violates an alien's due process rights, the Government may not rely on any resulting deportation order as proof of an element of a criminal offense. *See id.* at 840, 107 S.Ct. at 2156.

However, in spite of any violation of the alien's due process rights, the deportation order may still be used to prove an element of a crime if the alien fails to show prejudice resulting from the violation. Subsequent to the Supreme Court's decision in *Mendoza*, which prohibited the use of a deportation order to prove an element of § 1326 where the deportation hearing violated the alien's due process rights, we held:

> A defendant who seeks to exclude evidence of a deportation order in a prosecution under 8 U.S.C. § 1326 must do more than demonstrate deprivation of the right to a direct appeal from that order. The defendant also bears the burden of proving prejudice.

*Proa–Tovar*, 975 F.2d at 595. In *Proa–Tovar*, the Government conceded the alien did not knowingly and intelligently waive his direct appeal rights. *Id.* at 593. Despite the deprivation of the right to appeal, the alien was "unable to articulate any prejudice he might have suffered." *Id.* at 594. Consequently, we affirmed the alien's conviction under § 1326.

In *Proa–Tovar*, we declined "to delineate the boundaries of the prejudice element." *Id.* at 595–96. We did note, though, that the alien in *Proa–Tovar* pointed "to no plausible grounds of relief that might have been available to him on appeal." *Id.* at 594. The only circumstance under which we suggested no showing of prejudice was necessary was "when the administrative proceedings were so flawed" that an effective judicial review of a deportation, which might otherwise have been prevented, would be foreclosed. *Id.* at 595. However, this was not the case in *Proa–Tovar* where "[t]he lack of a direct appeal only resulted in [the alien] leaving at a somewhat earlier time" because he would have been deported anyway. *Id.*

■ In this case, we hold that Leon–Leon's due process rights were violated during the deportation hearing. Although Leon–Leon was not entitled to translation of the entire hearing, the IJ was required to exercise his discretion to determine that portion of the proceeding to be translated in order to protect Leon–Leon's reasonable opportunities to show why he should not be deported. *El Rescate Legal Servs., Inc. v. Executive Office of Immigration Review*, 959 F.2d 742, 752 (9th Cir.1992). By failing to translate crucial inquiries at the deportation hearing, the IJ deprived Leon–Leon of this reasonable opportunity. Thus, we hold that he abused his discretion when he asked Leon–Leon in a single, compound, untranslated question whether he waived his rights and whether he admitted he was deportable.

■ However, in spite of this due process violation, Leon–Leon failed to show any prej-

---

**2.** Leon–Leon also argues his due process rights were violated because the hearing was conducted by telephone without his consent. The Government contends, and Leon–Leon conceded at oral argument, that the hearing was held telephonically at the request of Leon–Leon's attorney. We have held that an alien is entitled to be physically present at a deportation hearing. *See Purba v. INS*, 884 F.2d 516, 517 (9th Cir.1989). In *Purba*, we indicated that this procedural right may be waived if the alien consents to the telephonic

hearing. *See id.* We have not resolved the issue of what type of consent, implied or express, is necessary to properly hold a telephonic deportation hearing. However, because we hold that Leon–Leon's due process rights were violated as a result of the IJ's failure to translate crucial portions of the deportation hearing, we need not resolve the issue of whether the request of Leon–Leon's attorney to hold the hearing by telephone was adequate consent.

udice resulting from the violation. Like the alien in *Proa–Tovar*, Leon–Leon offers no plausible grounds of relief which might have been available to him but for the deprivation of rights. Instead, Leon–Leon argues prejudice should be presumed. However, we have clearly held the alien has the burden of proving prejudice in such circumstances. *Proa–Tovar*, 975 F.2d at 595. Furthermore, although the IJ abused his discretion by failing to have important portions of the hearing translated, Leon–Leon failed to refute the fact that he is clearly deportable.

It has now been six years since Leon–Leon was deported to Mexico, two years since he was arrested in August 1992, and two years since *Proa–Tovar* was decided in September 1992. Leon–Leon has not offered to prove that he was actually prejudiced by the due process violations at the 1988 hearing. The lack of such evidence entitles us to conclude that he would have been deported in 1988 even if the hearing had been perfectly conducted.

A deportation hearing is not a criminal trial and need not be conducted as such. An alien's due process rights are adequately protected if, as permitted by *Mendoza–Lopez* and *Proa–Tovar*, he can establish in a later criminal case that the defects in the deportation hearing actually prejudiced him. A showing of prejudice deprives the Government of the foundation of the illegal reentry charge which is a sufficient vindication of the alien's rights to due process. A prophylactic rule aimed at encouraging INS hearing officers to do a better job by not requiring a showing of prejudice in the later criminal trial was specifically rejected by the en banc court in *Proa–Tovar*. *See* 975 F.2d at 596 (Goodwin, J., dissenting). Leon–Leon here advocates exactly the result rejected in *Proa–Tovar*. Consequently, we hold the district court did not err in allowing the deportation order to be offered as proof of an element of § 1326.

**B. *Reasonable Belief of Permission to Reenter***

We review the district court's evidentiary rulings for an abuse of discretion. *United States v. Hedgcorth*, 873 F.2d 1307, 1313 (9th Cir.), *cert. denied*, 493 U.S. 857, 110 S.Ct. 164, 107 L.Ed.2d 122 (1989).

■ Leon–Leon sought to offer at trial evidence that he was in possession of a green card to establish that he reasonably believed he had permission to reenter the United States. He argues the district court erred in precluding this evidence. Leon–Leon concedes that our decision in *Pena–Cabanillas v. United States*, 394 F.2d 785 (9th Cir.1968), is controlling. However, Leon–Leon contends this case was wrongly decided and requests we overrule the decision and adopt the Seventh Circuit's decision in *United States v. Anton*, 683 F.2d 1011 (7th Cir.1982).

In *Pena–Cabanillas*, we held that specific intent is not an element of § 1326. 394 F.2d at 790. As a result, we further held that:

> The government need only prove that the accused is an alien and that he illegally entered the United States after being deported according to law.... Put differently, the government need not prove that [the alien] knew he was not entitled to enter the country without the permission of the Attorney General.

*Id.* at 789–90. We have, on at least two occasions, reaffirmed the rule in *Pena–Cabanillas*. *See United States v. Ramos–Quirarte*, 935 F.2d 162, 163 (9th Cir.1991) ("[T]here is nothing in the statute to suggest that specific intent is an element of the offense."); *United States v. Palmer*, 458 F.2d 663, 665 (9th Cir.1972) (The alien's "guilt did not depend upon a showing that he knew he was not to reenter without permission."). In *Ramos–Quirarte*, this court held that the district court did not err in declining to admit evidence that the alien was in possession of an Employment Authorization Card after he had illegally reentered the United States. It found possession of the card was "in no way a defense to the charge that his return itself was illegal under section 1326." *Ramos–Quirarte*, 935 F.2d at 163.

The Seventh Circuit rejected the rule in *Pena–Cabanillas* that specific intent was not an element of § 1326. *Anton*, 683 F.2d at 1015. Instead, it held that "[i]f the defendant *reasonably* believed that he had the consent of the Attorney General to reenter the United States, it would certainly be unjust to subject him to this criminal sanction." *Id.* at 1018. The Seventh Circuit is the only

circuit finding intent is necessary for a conviction under § 1326. *See United States v. Espinoza–Leon,* 873 F.2d 743, 746 (4th Cir.) (collecting cases), *cert. denied,* 492 U.S. 924, 109 S.Ct. 3257, 106 L.Ed.2d 602 (1989).

We are bound by our decision in *Pena–Cabanillas* and that hold the district court did not abuse its discretion by denying admission of evidence regarding Leon–Leon's reasonable belief. Evidence that he possessed a green card was not relevant.

## IV.

### *Conclusion*

Although Leon–Leon's due process rights were violated because important portions of the hearing were not translated for him, Leon–Leon failed to assert any prejudice as a result of these violations. Consequently, the district court did not err by allowing the Government to use the deportation order to prove an element of § 1326. Furthermore, Leon–Leon's reasonable belief that he had permission to reenter the United States is irrelevant. We are bound by our decision in *Pena–Cabanillas* which holds that § 1326 is not a specific intent crime.

AFFIRMED.

FERGUSON, Circuit Judge, dissenting.

Appellant, Jose Manuel Leon–Leon was convicted of being an alien who, in violation of 8 U.S.C. § 1326, reentered the United States without permission after having been deported.

Appellant's 1988 deportation hearing was held by telephone. Appellant and his attorney were at the INS office in Tucson, Arizona and the Immigration Judge was presiding in Phoenix. There is no evidence in the record to show that Leon–Leon waived his right to be physically present at the hearing. *See Purba v. Immigration & Naturalization Svc.,* 884 F.2d 516, 518 (9th Cir.1989) (parties must consent to telephonic hearings).

Since the appellant did not speak English, a court interpreter was present in Phoenix. The only questions translated into Spanish related to the appellant's name, whether he spoke Spanish and whether Fernando Gaxiola was his attorney. Leon–Leon responded affirmatively in Spanish to each of these questions.

After clarifying these preliminary matters, the court then asked Leon–Leon's attorney, in a single, compound question, whether the appellant would waive the seven day rule with respect to the date of the telephonic hearing, admit service of the order to show cause on the appellant, waive the reading of appellant's rights, waive the reading of the order to show cause, admit the factual allegations in the order to show cause, admit that appellant was deportable, and designate Mexico as the appellant's country of origin. The attorney agreed.

This question was not addressed to the appellant or even translated into Spanish. Not only was the appellant unable to participate meaningfully, he could not even follow along as his attorney waived his rights. *See Tejeda–Mata v. Immigration & Naturalization Svc.,* 626 F.2d 721, 726 (9th Cir.1980), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982) (this court has repeatedly recognized the importance of an interpreter to the fundamental fairness of a deportation hearing; it was improper for the Immigration Judge to deny simultaneous translation when the interpreter was present at the hearing).

Under these circumstances, the appellant's due process rights were violated. There was insufficient evidence to show that he waived his right to be physically present at his deportation hearing. Moreover, no meaningful translation of the hearing was provided.

Despite these violations, the government, relying on *United States v. Proa–Tovar,* 975 F.2d 592 (9th Cir.1992) (*en banc*), argues that the 1988 deportation order may still be used to prove that the appellant violated § 1326 unless the appellant shows that he suffered prejudice from the due process violations. If the appellant cannot show prejudice, the government argues, the due process violations amount to harmless error. The government errs in its analysis. First, the government vastly overstates this court's holding in *Proa–Tovar.* Second, a harmless error analysis cannot be applied in this case.

### A. *United States v. Proa–Tovar*

In November 1989, Proa–Tovar was charged with violation of 8 U.S.C. § 1326.

At trial, he sought to exclude his prior deportation order arguing that his due process rights were violated in the deportation hearing since he was not properly advised of, and had not knowingly and intelligently waived his right to a direct appeal of those proceedings. The government conceded that Proa–Tovar's waiver of his right to a direct appeal was not knowing and intelligent. The government argued, however, that he was nonetheless deportable because he showed no prejudice resulting from the violation. The district court denied Proa–Tovar's motion to dismiss and the jury found him guilty.

On appeal, this court held that when "an alien is deprived of the right to direct judicial review of a deportation order but the deprivation does not result in any prejudice," evidence of that order need not be excluded in a later prosecution for illegal reentry. 975 F.2d at 594.

The court noted that it was well-established that an appellant must demonstrate prejudice when a *collateral attack* is made on an immigration order during § 1326 prosecutions. Relying on *United States v. Mendoza–Lopez*, 481 U.S. 828, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987), the court extended this rule to an attack made "on the ground that there has been a deprivation of the right to *direct appeal* of the administrative proceedings." 975 F.2d at 595 (emphasis added).

The *en banc* court specifically noted that the issue before it was "narrow and straightforward." 975 F.2d at 594. The court decided that prejudice must be shown when an alien attacks a deportation order on the ground that he was deprived of the right to a direct appeal of the deportation hearing. The court in *Proa–Tovar* did not hold, as the government implies, that whenever there is a due process violation in a deportation hearing, no matter how egregious, the alien must always prove prejudice in order to preclude subsequent use of the deportation order in a § 1326 case. *Proa–Tovar* addressed only the denial of the right to direct appeal.

### B. *Harmless Error*

The government also argues that, if an alien is clearly deportable and cannot show prejudice, it was harmless error that his deportation hearing violated due process.

In *Arizona v. Fulminante*, 499 U.S. 279, 309, 111 S.Ct. 1246, 1264–65, 113 L.Ed.2d 302 (1991), the Supreme Court held that structural defects in a trial are not subject to a harmless error standard.[1] However, trial errors—those that occur "during the presentation of the case to the jury, and which may therefore be quantitatively assessed in the context of other evidence presented in order to determine whether its admission was harmless beyond a reasonable doubt"—are subject to such an standard. 499 U.S. at 307–08, 111 S.Ct. at 1264.

In this case, the appellant's deportation hearing was held by phone without any evidence that he consented to not being physically present. Other than the preliminary questions, the judge's questions were not translated into Spanish, making it impossible for the appellant to participate or even understand what was happening. These were structural defects that affected the very framework within which the hearing proceeded.

In *Fulminante*, the Court listed other errors that are structural in nature and not subject to the harmless error standard. These include excluding members of the defendant's own race from a grand jury, *Vasquez v. Hillery*, 474 U.S. 254, 106 S.Ct. 617, 88 L.Ed.2d 598 (1986); denial of the right to represent one's self at trial, *McKaskle v. Wiggins*, 465 U.S. 168, 104 S.Ct. 944, 79 L.Ed.2d 122 (1984); and denial of the right to a public trial, *Waller v. Georgia*, 467 U.S. 39, 104 S.Ct. 2210, 81 L.Ed.2d 31 (1984). The Court noted that each of these affects the framework within which the trial proceeds. 499 U.S. at 310, 111 S.Ct. at 1265. "Without these basic protections, a criminal

---

1. *Fulminante* was a criminal case while deportation cases are civil. *Fong Yue Ting v. United States*, 149 U.S. 698, 703, 13 S.Ct. 1016, 1018, 37 L.Ed. 905 (1893) (deportation is not criminal punishment). However, in this case the govern-

ment is seeking to use the deportation order to prove an element of a *criminal* offense against Leon–Leon, *i.e.* that he illegally reentered this country after being deported. Therefore, *Fulminante*'s safeguards are applicable to this case.

trial cannot reliably serve its function as a vehicle for determination of guilt or innocence, and no criminal punishment may be regarded as fundamentally fair." 499 U.S. at 310, 111 S.Ct. at 1265. Structural errors defy analysis by the harmless error standard because they affect the very reliability of the proceedings.

In this case, the error at issue affected the "entire conduct of the trial from beginning to end." 499 U.S. at 309, 111 S.Ct. at 1265. Leon–Leon was tried and deported without any translation of the proceedings. He was helpless to defend himself. Without being able to understand the proceedings and aid in his own defense, the hearing could not reliably determine Leon–Leon's deportability.

The error in Leon–Leon's proceeding was not so discreet such that this court may set aside its effect and examine all other relevant evidence and determine whether the error was harmless. The error permeates the hearing itself. If this is set aside, the court has nothing left to examine. Such is the nature of a structural defect.

This court may not use a harmless error analysis to determine whether the appellant suffered prejudice as a result of the due process violation. *Proa–Tovar* does not require it and, indeed, *Fulminante* precludes such an analysis because appellant's hearing was structurally defective. Thus, the deportation order should not have been used to prove an element of appellant's § 1326 violation and the conviction should be reversed.