**UNITED STATES of America,
Plaintiff,**

v.

**Jose Daniel HIGAREDA–RAMIREZ,
aka Juan Flores–Calderon,
Defendant.**

**No. 99–00066 SOM.**

United States District Court,
D. Hawai'i.

July 26, 2000.

---

Omer G. Poirier, Asst. U.S. Atty., Office of U.S. Atty., Honolulu, HI, for Plaintiff.

Samuel P. King, Jr., Honolulu, HI, for Defendant.

MOLLWAY, District Judge.

*ORDER DISMISSING INDICTMENT*

I. *INTRODUCTION.*

This case presents the much-litigated question of when due process violations in a deportation proceeding render the proceeding "fundamentally unfair" under 8 U.S.C. § 1326.

The Ninth Circuit has repeatedly held that a due process violation, without more, does not make a deportation proceeding fundamentally unfair under section 1326. The due process violations in this case were legion. Besides being improperly deprived of an opportunity for judicial review, the alien was not informed that he had a right to counsel or of how he might obtain free legal counsel. He was not provided with an interpreter even though

he spoke little English. Critical to this court and unique to this case is the complete lack of any record or transcript of the deportation proceeding. There are no files detailing what happened or what evidence or specific allegations were presented. The government cannot establish what the alien had to refute in the deportation proceeding, and the alien is therefore at a loss to show how deportation might have been avoided but for the due process violations.

Under these circumstances, this court can only conclude that the due process violations in the deportation proceeding robbed the proceeding of any meaning and made the outcome inevitable. This court finds that, under the unusual combination of factors before it, the deportation proceeding must be found to have been fundamentally unfair. As a result, the government may not rely on the deportation order to establish that Defendant Jose Daniel Higarda–Ramirez, aka Juan Flores–Calderon ("Higareda–Ramirez") committed the crime of unauthorized reentry into the United States after previous deportation.[1]

The matter is before this court on the motion by Higareda–Ramirez to dismiss the indictment on the ground that the deportation order, an essential element of the crime charged,[2] was procured in a

---

1. The indictment charges:
   On or about September 2, 1998, in the District of Hawaii, the Defendant, JOSE DANIEL HIGAREDA–RAMIREZ, aka Juan Flores Calderon, an alien who had been previously arrested and deported from the United States pursuant to law, was found in the United States, having knowingly and unlawfully entered the United States without obtaining the consent of the Attorney General of the United States for reapplication by the Defendant for admission into the United States.
   In violation of Title 8, United States Code, Section 1326(a).
   Indictment (February 11, 1999.)

2. In pertinent part, 8 U.S.C. § 1326(a) states: any alien who—
   (1) has been denied admission, excluded, deported, or removed or has departed the

United States while an order of exclusion, deportation, or removal is outstanding, and thereafter
(2) enters, attempts to enter, or is at any time found in, the United States, unless (A) prior to his reembarkation at a place outside the United States or his application for admission from foreign contiguous territory, the Attorney General has expressly consented to such alien's reapplying for admission; or (B) with respect to an alien previously denied admission and removed, unless such alien shall establish that he was not required to obtain such advance consent under this chapter or any prior Act,
shall be fined under Title 18, or imprisoned not more than 2 years, or both.
8 U.S.C. § 1326(a).

proceeding that was fundamentally unfair. The motion is granted.

## II. *STIPULATED FACTS.*

Higareda–Ramirez is a Mexican citizen. He was deported on or about May 8, 1992. Warrant of Deportation (May 8, 1992) ("Flores–Calderon, Juan Deported at Port of Calexico, Ca on 5–8–92").[3] Before he was deported, a hearing was held before an Immigration Judge. No transcript or record of that deportation hearing exists. The court has before it only a few pages of documents relating to the deportation hearing. One document is titled "Order to Show Cause, Notice of Hearing, and Warrant for Arrest of Alien." The space for the hearing date, time, and place contains only the notation "date, time and place to be set by Immigration Judge." In what appears to have been a continuation of the Order to Show Cause, Juan Flores–Calderon, aka Jose Higareda, is informed that he is charged with having entered the United States without inspection and with being an excludable alien given an alleged conviction for a crime involving moral turpitude. The court also has before it a Notice to Respondent that states, "If you so choose, you may be represented at the proceeding, at no expense to the Government, by an attorney." All of the sparse documents are entirely in English.

At the hearing before this court on the motion by Higareda–Ramirez to dismiss the indictment, the government accepted the following offer of proof by Higareda–Ramirez as setting forth the circumstances of the 1992 deportation hearing:

Defendant was herded into a deportation hearing in 1992 while he was serving a prison sentence in California. Defendant . . . appeared before the immigration judge (IJ) with many other aliens who were also subject to deporta-

tion. Defendant . . . did not have an attorney, . . . was not given any information on how he might obtain a free attorney at no cost to the Government, . . . did not have an interpreter (his English was marginal back in 1992, he speaks better English today), . . . was told to "sign here" and would be sent back to Mexico and his prison sentence in California would be cut short, . . . was not individually advised of his right to appeal his deportation order to the Board of Immigration Appeals (BIA) or to the federal courts, and that he was not advised that he had the right to seek voluntary departure as an alternative to deportation.

*See* Declaration of Samuel P. King, Jr. (setting forth the offer of proof, which the government stipulated to at the hearing).[4]

It is undisputed that there is no transcript or other record of the deportation hearing. At this point, the parties and the court can only speculate about what was said at the hearing, what evidence was presented by the government, and what, if any, opportunity Higareda–Ramirez, who neither understood English nor was represented at the deportation hearing, had to respond to the allegations.

In opposing the motion to dismiss the indictment, the government has presented this court with records that, according to the government, show that Higareda–Ramirez committed burglary in the first degree in California in 1984, pled guilty in California state court in 1984, and was sentenced in 1985. According to the documents, in 1990, while on parole in connection with the 1985 sentence, he violated that parole and was therefore arrested and brought back before the California state court. The government also submits documents relating to a California state crimi-

---

**3.** The parties have not disputed for purposes of the present motion to dismiss that Higareda–Ramirez was deported as "Juan Flores–Calderon."

**4.** In the government's Response re Availability of Voluntary Departure, filed on July 20,

2000, the government argued in a footnote that "form G–28 indicates that the Defendant was represented by counsel." As this argument contravenes the government's earlier stipulation to the facts offered by Higareda–Ramirez, the court does not consider this argument.

nal case against "Juan Jose Pacias Ayala and Jacobo Rodriguez" for allegedly having taken and driven a car that was not theirs and for receiving stolen property. The offenses allegedly occurred in 1989. According to the government's documents, "Jacobo Rodriguez" was sentenced in 1990 for these 1989 offenses. The documents do not indicate the disposition of the charges against "Juan Jose Pacias Ayala." The government appears to be contending that "Jacobo Rodriguez" is Higareda–Ramirez, but the government submits no proof to that effect.

## III. *STANDARD ON A MOTION TO DISMISS.*

Rule 12(b) of the Federal Rules of Criminal Procedure allows the consideration at the pretrial stage of any defense "which is capable of determination without the trial of the general issue." To withstand a motion to dismiss, an indictment must allege that the defendant performed acts that, if proven, would constitute a violation of the law under which he has been charged. *United States v. Finn,* 919 F.Supp. 1305, 1339 (D.Minn.1995), *aff'd, U.S. v. Pemberton,* 121 F.3d 1157 (1997), *cert. denied,* 522 U.S. 1113, 118 S.Ct. 1046, 140 L.Ed.2d 111 (1998). As a result, if the acts that have been alleged in the indictment do not constitute a criminal offense, then the indictment should be dismissed. *See, e.g., United States v. Coia,* 719 F.2d 1120, 1123 (11th Cir.1983), *cert. denied,* 466 U.S. 973, 104 S.Ct. 2349, 80 L.Ed.2d 822 (1984). For purposes of section 1326, an indictment must be dismissed when a defendant successfully mounts a collateral attack on his or her previous deportation order. *United States v. Mendoza–Lopez,* 481 U.S. 828, 842, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) (holding that indictments for violation of section 1326 are properly dismissed when an alien successfully challenges his or her underlying deportation order).

## IV. *STATUTORY AND CASE LAW BACKGROUND.*

In 1987, the Supreme Court ruled that, when a person's rights are violated in a proceeding before an Immigration Judge such that the person is completely deprived of judicial review of a resulting deportation order, the government, in a subsequent criminal prosecution, may not rely on that deportation order as reliable proof of an element of the criminal offense. *Mendoza–Lopez,* 481 U.S. at 839–42, 107 S.Ct. 2148. In a prosecution under 8 U.S.C. § 1326 for re-entry without authorization by a previously deported person, proof of the prior deportation is clearly an element of the offense. The case law that developed after *Mendoza–Lopez* was decided made it clear that a "defendant who seeks to exclude evidence of a deportation order in a prosecution under 8 U.S.C. § 1326 must do more than demonstrate deprivation of the right to a direct appeal from that order. The defendant also bears the burden of proving prejudice." *United States v. Proa–Tovar,* 975 F.2d 592, 594 (9th Cir.1992) (en banc). A deprivation of a right at the deportation hearing does not, without more, support exclusion of evidence of the deportation order. As the Ninth Circuit said in *United States v. Leon–Leon,* 35 F.3d 1428, 1431 (9th Cir.1994), "[I]n spite of any violation of the alien's due process rights, the deportation order may still be used to prove an element of a crime if the alien fails to show prejudice resulting from the violation." To show prejudice, a person who was deported "only needs to show that he has plausible grounds for relief." *United States v. Jimenez–Marmolejo,* 104 F.3d 1083, 1086 (9th Cir.1996).

In 1996, Congress amended section 1326, adding subsection (d). Section 1326(d) appears, at least in part, to codify standards established in *Mendoza–Lopez* and its progeny. *United States v. Sanchez–Peralta,* 1998 WL 63405, \*2 (S.D.N.Y. Feb.13, 1998). Section 1326(d) allows a deportation order to be collaterally attacked for purposes of section 1326 if (1) a deportee has exhausted any administrative

remedies that may have been available to seek relief from the order; (2) the deportation proceedings at which the order was issued improperly deprived that deportee of the opportunity for judicial review; and (3) the entry of the deportation order was "fundamentally unfair." [5]

## V. ANALYSIS.

■ Because there is no transcript or other record of the deportation hearing in issue here, and because there is no dispute that Higareda–Ramirez did not have an attorney or an interpreter at that hearing, the court is compelled to find that the deportation hearing was so "fundamentally unfair" that it cannot be used against Higareda–Ramirez. There is no evidence suggesting that the government ever met its burden in the deportation hearing of showing that Higareda–Ramirez was deportable. Certainly the government has made no such showing in proceedings before this court. At most, the government has argued in the present case that it could, if necessary, show that Higareda–Ramirez was deportable. The government, however, has not made that showing because, it argues, in a collateral attack of a deportation order, the burden rests with Higardea–Ramirez to show the fundamental unfairness of the deportation proceeding by showing that he was prejudiced by the denial of due process.

The government is correct in saying that a defendant has the burden in a collateral attack on a deportation proceeding. *See Proa–Tovar*, 975 F.2d at 595 ("A defendant who seeks to exclude evidence of

a deportation order in a prosecution under 8 U.S.C. § 1326 must do more than demonstrate deprivation of the right to a direct appeal from that order. The defendant also bears the burden of proving prejudice"). But that burden rests with the defense precisely because the government should be able to show that it was already put to its proof in the deportation hearing. When the government was never put to its proof, it is fundamentally unfair to make a defendant prove a negative and show that he was not deportable. The defendant has no allegations to disprove. The defendant cannot know what accusations he must meet. This case presents a circumstance in which the government may never have presented any case at all to the Immigration Judge, and Higareda–Ramirez may never have had any opportunity to rebut any allegation. To permit the government never to have put on any proof at all of deportability and then to shift the burden to Higareda–Ramirez makes a mockery of the hearing process itself. If that is allowed, all deportation hearings might as well be cancelled. The government's reliance on the 1992 deportation order to satisfy section 1326's requirement that Higareda–Ramirez have been previously deported is fundamentally unfair.

In *Mendoza–Lopez*, the Supreme Court stated that, when "a determination made in an administrative proceeding is to play a critical role in the subsequent imposition of a criminal sanction, there must be some meaningful review of the administrative hearing." [6] *Mendoza–Lopez*, 481 U.S. at

---

5. In the present case, the government conceded at the hearing that, for purposes of this case only, Higareda–Ramirez had demonstrated the first two-prongs of section 1326(d). Accordingly, only the third prong of section 1326(d)—whether Higareda–Ramirez's deportation order was "fundamentally unfair"—is before this court.

6. In *Mendoza–Lopez*, the Immigration Judge accepted unknowing waivers of rights to apply for suspension of deportation. *See Mendoza–Lopez*, 481 U.S. at 831, 840, 107 S.Ct. 2148 (the "Immigration Judge permitted

waivers of the right to appeal that were not the result of considered judgments by respondents, and failed to advise respondents properly of their eligibility to apply for suspension of deportation"). *Mendoza–Lopez* assumed that the underlying deportation hearing was fundamentally unfair. *See id.* at 834 n. 8, 107 S.Ct. 2148 (noting that the government did not seek review of the Court of Appeal's determination that the deportation hearing was fundamentally unfair) and at 840 ("We consequently accept the legal conclusions of the court below that the deportation hearing violated due process"). Because the waivers of

837–38, 107 S.Ct. 2148. The Court held that, when fundamental procedural defects in a deportation hearing render direct review of an Immigration Judge's determination unavailable, a deportation order cannot be used to satisfy an element of section 1326. *Id.* at 841–42, 107 S.Ct. 2148.

When Congress subsequently added section 1326(d), it codified both the judicial review requirement of *Mendoza–Lopez* and the requirement that a deportation proceeding not have been "fundamentally unfair." *See* 8 U.S.C. § 1326(d)(3). The government argues that the statutory words "fundamentally unfair" represent the congressional codification of the requirement that a defendant collaterally attacking a deportation order in a subsequent section 1326 case demonstrate that he or she would not have been deported but for the fundamental unfairness of the deportation proceeding. As noted earlier, this requirement was articulated in cases expounding on *Mendoza–Lopez* and decided before section 1326(d) was amended in 1996. Such cases required a defendant to show that a due process violation at the deportation hearing "prejudiced". him or her. *See Leon–Leon,* 35 F.3d at 1431; *Proa–Tovar,* 975 F.2d at 594. But the incantation by the government of the prejudice requirement still leaves this court with the problem of determining when the required prejudice occurs.

■■■ The Fifth Amendment guarantees due process in deportation proceedings. *Colmenar v. INS,* 210 F.3d 967, 971 (9th Cir.2000); *Campos–Sanchez v. INS,* 164 F.3d 448, 450 (9th Cir.1999). An alien who faces deportation is entitled to a full and fair hearing of his claims and a reasonable opportunity to present evidence on his behalf. *Colmenar,* 210 F.3d at 971;

*Campos–Sanchez,* 164 F.3d at 450 ("Under this Circuit's case law, an alien must receive a 'full and fair hearing,' in order to meet the requirements of due process"). To prevail on a due process challenge to deportation proceedings, an alien must show error and prejudice. A showing of prejudice is essentially a demonstration that the alleged violation affected the outcome of the proceedings.[7] Prejudice will not be presumed. *Larita–Martinez v. INS,* 220 F.3d 1092, 1094 (9th Cir.2000); *Lata v. INS,* 204 F.3d 1241, 1246 (9th Cir.2000). *Accord Colmenar,* 210 F.3d at 971 ("We also require an alien to show prejudice, which means that the outcome of the proceeding may have been affected by the alleged violation"). Prejudice may be found, for example, when the performance of counsel was so inadequate that it may have affected the outcome of the proceedings. *Ortiz v. INS,* 179 F.3d 1148, 1153 (9th Cir.1999).

In the present case, Higareda–Ramirez can plausibly demonstrate prejudice. He did not speak English and did not have an attorney or interpreter with him at his deportation hearing. This deprived him of his right to participate meaningfully in the deportation hearing. *See Hartooni v. INS,* 21 F.3d 336, 340 (9th Cir.1994) ("The right of a person facing deportation to participate meaningfully in the deportation proceedings by having them competently translated into a language he or she can understand is fundamental"); *Tejeda–Mata v. INS,* 626 F.2d 721, 726 (9th Cir. 1980) ("It is equally well established, however, that when an alien is charged with having entered the United States illegally, he or she is entitled to a full and fair hearing prior to deportation, and this court and others have repeatedly recognized the

their rights to appeal were not considered or intelligent, *Mendoza–Lopez* concluded that the respondents were deprived of judicial review of their deportation proceeding. *Id.* at 840, 107 S.Ct. 2148.

7. The "prejudice" requirement imposed in these cases involving direct judicial review of decisions of the Board of Immigration Ap-

peals is identical to the "prejudice" requirement imposed on a defendant who collaterally attacks a deportation order in a subsequent criminal prosecution for unauthorized re-entry after deportation. *See Jimenez–Marmolejo,* 104 F.3d at 1086 (noting that prejudice is established when an alien demonstrates plausible grounds for relief).

importance of an interpreter to the fundamental fairness of such a hearing if the alien cannot speak English fluently") (citations omitted), *reh'g denied,* 665 F.2d 269 (1981), *cert. denied,* 456 U.S. 994, 102 S.Ct. 2280, 73 L.Ed.2d 1291 (1982). Based on the stipulated facts that Higareda–Ramirez did not speak English and was not provided with an interpreter or told he could have an attorney represent him, Higareda–Ramirez could not have understood what was happening to him at the deportation hearing. He could not have comprehended his rights or known what the government's burden was at the deportation hearing. He therefore could not have attacked any evidence put before the Immigration Judge that tended to show he was deportable, even assuming any such evidence was presented. Such an assumption would, in fact, be without basis, as there is no record in this case showing that the government actually proved at the deportation hearing that Higareda–Ramirez was deportable.

▮ It is fundamentally unfair to base charges against Higareda–Ramirez on a 1992 deportation order when the government has never met its burden of demonstrating that, in 1992, Higareda–Ramirez was deportable. While a deportation order may carry a presumption of validity, *see, e.g., United States v. Arevalo–Tavares,* 210 F.3d 1198, 1200 (10th Cir.2000), that presumption is surely rebutted by a complete lack of evidence supporting the order.

At the hearing on the motion to dismiss the indictment, the government argued

that, because it can now prove that Higareda–Ramirez was deportable at the time of his deportation hearing, it is irrelevant whether it actually proved that he was deportable at that hearing. The government cites no authority for this proposition.[8]

Moreover, even today, in appearing before this court, the government does not show that Higareda–Ramirez was deportable in 1992. The lack of a record of the deportation hearing makes it impossible for this court to know whether Higareda–Ramirez was, for example, given a chance to show that he had indeed been inspected by an Immigration Officer upon re-entry into the United States, if such was the case. The lack of an interpreter and of an attorney heighten the court's concern in this regard.

The lack of a record further makes it impossible for this court to know precisely what proof the government presented that Higareda–Ramirez was convicted of a crime of moral turpitude. Item 5 on page 2 of the Order to Show Cause refers to a single burglary conviction on December 14, 1984. While the documents the government has submitted to this court speak of two 1984 burglaries, it appears the deportation proceeding was based on only one 1984 burglary. Under the version of 8 U.S.C. § 1251 in effect in 1992, an alien could be deported if he was (a) convicted of a single crime involving moral turpitude committed within five years after the date he entered the United States, and (b) sentenced or confined as a result for a year or

---

8. At most, the government refers the court to cases in which the Ninth Circuit found no prejudice because the records before the Immigration Judges in those cases established that the aliens would have been deportable even had due process violations not occurred. *See, e.g., Leon–Leon,* 35 F.3d at 1432 ("although the IJ abused his discretion by failing to have important portions of the hearing translated, Leon–Leon failed to refute the fact that he is clearly deportable"); *Proa–Tovar,* 975 F.2d at 595 ("Here it is essentially conceded that a direct appeal could not have yielded a different result. By all accounts,

Proa–Tovar would have been deported anyway"). This court has studied those authorities with considerable attention and finds them unhelpful to the government in the present case. Those cases relied for their conclusions on information in the deportation proceeding records. Those cases did not stand for the proposition that the government may have a complete failure of proof at a deportation hearing, nevertheless obtain a deportation order, and then present evidence of deportability for the first time in response to a collateral attack.

longer. A burglary for which an alien was sentenced in December 1984 could not have served as the basis for deportation under that provision in a 1992 proceeding, as more than five years would have passed since the crime. Indeed, the statute speaks of a crime committed within five years after the date of entry, and the court has no evidence of any date of entry relevant to the 1992 deportation hearing in issue here. It may have been that the government put in no proof of any crime of moral turpitude committed within five years of the date Higareda–Ramirez entered the United States. Had Higareda–Ramirez had an interpreter and/or an attorney, he could have pointed out that lack of proof and possibly avoided deportation.

The version of 8 U.S.C. § 1251 in effect in 1992 also provided that an alien was deportable if he committed two or more crimes involving moral turpitude, not arising out of a single scheme of criminal misconduct, at *any* time after entry. There is no reference in the Order to Show Cause to two or more crimes of moral turpitude. The government has given to this court a 1990 conviction of someone named "Jacobo Rodriguez." It appears the government is arguing that this conviction, coupled with the 1984 conviction, constitutes the two crimes of moral turpitude. But this court has no evidence that the Immigration Judge considered two crimes, or that the Immigration Judge had any more evidence than this court does about who "Jacobo Rodriguez" was. The government may never have established that "Jacobo Rodriguez" was Higareda–Ramirez. Given the lack of an interpreter and the lack of an attorney, Higareda–Ramirez may not have understood that he was being equated with "Jacobo Rodriguez" and may thus have had no opportunity to contest that allegation or to point out that the government had not met its burden of showing that he was "Jacobo Rodriguez." To let the government base a criminal charge under section 1326 on a deportation order based on a crime of moral turpitude by someone other than the accused would be ludicrous.

In moving to dismiss the indictment, Higareda–Ramirez has not shown that he was not deportable. However, the law requires Higareda–Ramirez only to point to some plausible ground of relief that might have been available to him but for the deprivation of his due process rights. *See Leon–Leon,* 35 F.3d at 1431. Had Higareda–Ramirez been provided with an interpreter and counsel, he might have avoided deportation by challenging what the lack of a record suggests may have been the failure by the government to prove his deportability.[9]

In *Mendoza–Lopez,* the United States Supreme Court recognized that some procedural errors may be "so fundamental that they may functionally deprive the alien of judicial review" and "could operate, under some circumstances, to deny effective judicial review of administrative determinations." 481 U.S. at 839 n. 17, 107 S.Ct. 2148. *See also Leon–Leon,* 35 F.3d at 1431. This pronouncement was made in the context of the judicial review prong of a collateral attack on a deportation proceeding, a prong not in issue in the present case. But it makes little sense to recognize that due process violations may be fundamental in the context of judicial review but not to recognize the pervasive and fundamental nature of certain due process violations in the deportation hearing that is the subject of the third prong of a collateral attack. The lack of an interpreter alone might not be fundamentally unfair. *See Leon–Leon,* 35 F.3d at 1431–32.

---

**9.** The court notes that, if Higareda–Ramirez was, in fact, convicted of first degree burglary in California, even joyriding, those convictions would be convictions of moral turpitude that would have made Higareda–Ramirez ineligible for voluntary departure. *See People v. Suon,* 76 Cal.App.4th 1, 7 n. 6, 90 Cal.Rptr.2d

1 (1999) ("First degree burglary is an offense of moral turpitude under California law. Generally the characterization of the offense by the local jurisdiction determines whether an offense is one of moral turpitude for immigration purposes") (citations omitted).

**1256**

The absence of counsel alone might not be fundamentally unfair. *See Vides–Vides v. INS,* 783 F.2d 1463, 1470 (9th Cir.1986). But those two factors, combined with the total lack of a record of the deportation hearing, foreclose all avenues for relief.

One need not have an exceptional imagination to conceive of the horrors that might be perpetrated if aliens could be convicted based on deportation orders procured in unrecorded and thus fully insulated proceedings conducted in a language unintelligible to the unrepresented aliens. This court has no reason to believe that the INS acted malevolently in this case, but the circumstances of this case present the essence of fundamental unfairness. This court is not seeking simply a better deportation hearing. *See Leon–Leon,* 35 F.3d at 1432 (no "prophylactic rule aimed at encouraging INS hearing officers to do a better job"). This court is seeking a hearing with *some* meaning. Given the total absence of evidence that the hearing had any meaning, Higareda–Ramirez was prejudiced.

## VI. *CONCLUSION.*

The motion to dismiss is GRANTED and the indictment of Higareda–Ramirez for violation of section 1326 is dismissed. Higareda–Ramirez has established that his deportation hearing was fundamentally unfair because he had no interpreter or attorney, and because the record fails to establish that the government met its burden of demonstrating that he was deportable. Without such a showing, the government may not now rely on Higareda–Ramirez's deportation order to establish an element of section 1326.

The Clerk of Court is directed to enter judgment in favor of Higareda–Ramirez in accordance with this order, and Higareda–Ramirez is released to the INS consistent with its detainer.

IT IS SO ORDERED.