**UNITED STATES of America,
Plaintiff,**

v.

**Peter Alexander KELLY, Defendant.**

**Nos. CR. 00–0652–R, CR. 00–0653–R.**

United States District Court,
S.D. California.

July 14, 2000.

---

U.S. Atty. CR, Office of U.S. Atty., San Diego, CA, for U.S.

Federal Defenders, Federal Defenders of San Diego, San Diego, CA, for Peter Alexander Kelly.

## ORDER DENYING DEFENDANT'S MOTIONS TO DISMISS THE IN-DICTMENTS AND GRANTING HIS MOTION TO SEVER THE IN-DICTMENTS

RHOADES, District Judge.

### I. Overview

Peter Alexander Kelly ("Defendant") is charged in two consolidated indictments with reentry of a deported alien, in violation of 8 U.S.C. § 1326, and possession of marijuana with intent to distribute, in violation of 21 U.S.C. § 841(a)(1). Defendant has filed motions to dismiss the indictments or, alternatively, to sever the indictments. For the reasons set forth below, the Court denies Defendant's motions to dismiss and grants his motion to sever the indictments.

### II. Background[1]

There is no material dispute between the parties with regard to the pertinent facts. Defendant was arrested in early August, 1999, for possession of marijuana for sale, in violation of Cal. Health and Safety Code § 11359. Defendant describes in detail the facts of that arrest, which are uncontradicted by the government. Defendant asserts that federal agents stopped him to question his citizenship. After Defendant produced what the

---

1. The Court takes the following statement of facts from the parties' briefs and representations at the hearings held on June 6 and July 5, 2000. The Court expresses no view on the accuracy of those facts.

agents believed to be false documentation, the agents followed Defendant to his residence and conducted a search that lead to the seizure of marijuana and drug paraphernalia. Defendant plead guilty to violating § 11359 and was sentenced to sixty-seven days in jail and three years of probation. He never appealed or collaterally attacked his guilty plea.

Because he was in the United States illegally, Defendant appeared before an immigration judge ("IJ") on September 28, 1999, for removal proceedings. At that hearing, the IJ held that Defendant was ineligible for voluntary departure from deportation due to his § 11359 violation. Defendant asserted his innocence and claimed that he had plead guilty only to receive the benefits of his plea agreement. In response to Defendant's protestations, the IJ stated that he could not look behind the conviction and ordered Defendant deported from the United States. Defendant was removed to Jamaica on October 6, 1999.

On January 7, 2000, Defendant was observed and suspected as an illegal alien by a Border Patrol agent in Lemon Grove, California. An arrest warrant was issued for violation of 8 U.S.C. § 1326. On February 15, 2000, federal agents located Defendant at a residence at 9070 Valencia Street, Spring Valley, CA, where he purportedly lived with his girlfriend and her children. When the agents arrested Defendant, he was holding a cellular telephone, which the agents seized. Defendant was read his *Miranda* rights and stated that he had been deported and was in the United States illegally. Agents conducted a search of the house and seized various property.

During the arrest process, Defendant's cellular phone rang. Agents answered the phone and learned that someone was en route to the residence. Over an hour later, a vehicle arrived at the residence containing approximately nine kilograms of marijuana. One of the occupants of the vehicle possessed a cellular phone with the same number that had placed the earlier calls answered by agents. Defendant was again read his *Miranda* rights. He invoked his rights and refused to speak with agents. A grand jury returned two indictments against Defendant on March 1, 2000, one charging possession of marijuana and the other reentry of a deported alien. On April 24, 2000, the Court granted the government's oral motion to consolidate the indictments.

## III. Discussion

Defendant moves to dismiss both indictments or, alternatively, to sever the indictments for trial. With respect to the drug indictment, Defendant argues, based on the recent Supreme Court case of *Apprendi v. New Jersey*, — U.S. —, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000), that 21 U.S.C. § 841 is unconstitutional because it sets the maximum sentence by reference to facts determined by the sentencing judge by a preponderance of the evidence. Defendant moves to dismiss the 8 U.S.C. § 1326 charge due to alleged procedural flaws in the deportation hearing held on September 28, 1999. The Court denies Defendant's motions to dismiss and severs the two indictments for trial.

### A. Motion to Dismiss the 21 U.S.C. § 841 Indictment

#### (i) Summary

■ Defendant argues that § 841 is unconstitutional because § 841(b) establishes the mandatory maximum sentence by reference to facts that the sentencing judge finds by a preponderance of the evidence—i.e., drug type and quantity. The courts of this circuit have repeatedly confronted whether § 841(b) sets forth sentencing factors for the judge to decide or elements that must be proven to the jury beyond a reasonable doubt. Those courts have squarely held that § 841(b) states sentencing factors. *See, e.g., United States v. Harrison–Philpot*, 978 F.2d 1520, 1523 (9th Cir.1992). Nonetheless, recent Supreme Court caselaw compels the Court

to revisit the issue. After exhaustive deliberation, the Court holds that, while recent Supreme Court decisions have exhibited a trend toward classifying facts that bear on the sentence as elements, that trend has not progressed as far as Defendant urges. Rather, under the current state of the law, § 841(b) properly sets forth sentencing factors to be determined by the trial judge.[2]

### (ii) Relevant Precedent

Every element of a crime must be proven to the jury beyond a reasonable doubt. *See In re Winship,* 397 U.S. 358, 364, 90 S.Ct. 1068, 25 L.Ed.2d 368 (1970). Generally, legislatures are free to chose the elements that define their crimes. *See Patterson v. State of New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). Nonetheless, the Supreme Court has recognized for more than twenty years that some constitutional limit constrains the legislature's ability to circumvent the rule in *Winship* by reclassify an element of a crime as a sentencing factor. *See Patterson,* 432 U.S. at 210, 97 S.Ct. 2319; *see also McMillan v. Pennsylvania,* 477 U.S. 79, 89, 106 S.Ct. 2411, 91 L.Ed.2d 67 (1986) (stating that there are "constitutional limits to the State's power" to define the elements of a crime).

Until recently, the Supreme Court had "never attempted to define precisely the constitutional limits" noted in *Patterson. McMillan,* 477 U.S. at 86, 106 S.Ct. 2411. With *Jones v. United States,* 526 U.S. 227, 119 S.Ct. 1215, 143 L.Ed.2d 311 (1999), the Court decided the first of three cases that bring those limits more clearly into focus. *Jones* involved the federal carjacking statute at 18 U.S.C. § 2119, which then read as follows:

Whoever, possessing a firearm as defined in section 921 of this title, takes a motor vehicle that has been transported, shipped, or received in interstate or foreign commerce from the person or presence of another by force and violence or by intimidation, or attempts to do so, shall—

(1) be fined under this title or imprisoned not more than 15 years, or both,

(2) if serious bodily injury (as defined in section 1365 of this title) results, be fined under this title or imprisoned not more than 25 years, or both, and

(3) if death results, be fined under this title or imprisoned for any number of years up to life, or both.

*Jones,* 526 U.S. at 230, 119 S.Ct. 1215. The jury convicted Jones of a charge made under the first paragraph of § 2119, with no mention of "serious bodily injury." At sentencing, however, the government proposed a twenty-five year sentence because one of the victims had suffered serious bodily injury. *See id.* at 231, 119 S.Ct. 1215. The district judge imposed a twenty-five year sentence based on a finding by a preponderance of the evidence that serious bodily injury had resulted from Jones' offense. *See id.* The Supreme Court reversed.

The *Jones* Court held that "serious bodily injury" and "death" were elements of three separate offenses under § 2119 rather than sentencing factors. The Court reached this conclusion based on the doctrine of constitutional doubt, which holds that "where a statute is susceptible of two constructions, by one of which grave and doubtful constitutional questions arise and by the other of which such questions are avoided, our duty is to adopt the latter." *Id.* at 239, 119 S.Ct. 1215 (quoting *United States ex rel. Attorney General v. Dela-*

---

**2.** The Court makes this determination without the benefit of the official position of the Justice Department, which is still indeterminate at the time of decision. The prosecutor in this case did indicate at the July 5, 2000, hearing on Defendant's motions that the government may take the position that § 841(b) sets forth elements that must be proven to the

jury beyond a reasonable doubt. Of course, the Court need not accept the Justice Department's position on whether the Constitution requires drug type and weight to be submitted to the jury. "It is, emphatically, the province and duty of the judicial department, to say what the law is." *Marbury v. Madison,* 5 U.S. (1 Cranch) 137, 177, 2 L.Ed. 60 (1803).

*ware & Hudson Co.*, 213 U.S. 366, 408, 29 S.Ct. 527, 53 L.Ed. 836 (1909)). Because historical treatment and statutory structure did not conclusively support one interpretation of § 2119, the Court held that serious bodily injury was a element in order to avoid the "serious constitutional questions" from treating it as a sentencing factor. *See Jones*, 526 U.S. at 251, 119 S.Ct. 1215.

In identifying its "serious constitutional questions," the *Jones* Court stated that "prior cases suggest rather than establish" the following principle:

> [U]nder the Due Process Clause of the Fifth Amendment and the notice and jury trial guarantees of the Sixth Amendment; any fact (other than prior conviction) that increases the maximum penalty for a crime must be charged in the indictment, submitted to a jury, and proven beyond a reasonable doubt.

*Id.* at 243 n. 6, 119 S.Ct. 1215. Because § 2119 had two possible interpretations, the Court avoided the question of whether treating serious bodily injury as a sentencing factor transgresses this "suggested" constitutional principle by interpreting it as an element of the offense.

Recently, the Court moved beyond the constitutional doubt analysis of *Jones* in two cases that were decided three weeks apart: *Castillo v. United States*, —— U.S. ——, 120 S.Ct. 2090, 147 L.Ed.2d 94 (2000) and *Apprendi v. New Jersey*, —— U.S. ——, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Castillo*, the Court considered 18 U.S.C. § 924(c), which, at the time of trial, read as follows:

> Whoever, during and in relation to any crime of violence ..., uses or carries a firearm, shall, in addition to the punishment provided for such crime of violence ..., be sentence to imprisonment for five years, and if the firearm is a short barreled rifle [or a] short-barreled shot-

gun to imprisonment for ten years, and if the firearm is a machinegun, or a destructive device, or is equipped with a firearm silencer or a muffler, to imprisonment for thirty years.

*Castillo*, 120 S.Ct. at 2096–97. After the jury convicted Castillo for " 'knowingly us[ing] or carry[ing] a firearm during and in relation to' the commission of a crime of violence," *id.* at 2097, the sentencing judge found that the "firearms" in the case included handgrenades and machineguns equipped with silencers. On appeal, the Fifth Circuit held that the enhanced penalty provisions of § 924(c) for different types of weapons stated sentencing factors, not elements. *See id.* at 2092.

The Supreme Court reversed, defining the issue solely by reference to legislative intent:

> The question before us is whether Congress intended the statutory references to particular firearm types in § 924(c)(1) to define a separate crime or simply to authorize an enhanced penalty. If the former, the indictment must identify the firearm type and a jury must find that element proved beyond a reasonable doubt. If the latter, the matter need not be tried before a jury but may be left for the sentencing judge to decide.

*Id.* at 2092. In contrast to *Jones*, the *Castillo* Court does not resolve the question by reference to the constitutional limitations on Congress' ability to define the elements of federal crimes. Rather, the Court disregards Petitioner's reference to the "suggested" principle in *Jones* and decides, based on a multi-factor statutory interpretation,[3] that Congress intended the types of firearms to be elements. *See id.* at 2096. At the same time, the Court states that if Congress had intended firearm type to be a sentencing factor, it "may be left for the sentencing judge to decide." *Id.* at 2092.

---

**3.** The *Castillo* Court considers the following factors to determine Congress' intent: (1) the structure of the statute, (2) the traditional or historical employment of firearm type as an element of firearm offenses, (3) the ease with which juries could determine the firearm type, (4) the legislative history, and (5) the length and severity of the added mandatory sentence based upon use of the enumerated firearm types. *See Castillo*, 120 S.Ct. at 2093–96.

If *Castillo* seems to back away from the constitutional principle suggested in *Jones,* the Court resolved any doubts about the continuing vitality of that principle in *Apprendi v. New Jersey,* —— U.S. ——, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi,* the Court establishes *Jones'* "suggested" principle as "the statement of the rule": "[I]t is unconstitutional for a legislature to remove from the jury the assessment of facts that increase the prescribe range of penalties to which a criminal defendant is exposed." *Apprendi,* —— U.S. at ——, 120 S.Ct. at 2362. After *Apprendi,* any fact other than prior conviction that "increases the penalty for a crime beyond the prescribed statutory maximum" must be treated as an element of the offense. *Id.*

The *Apprendi* Court confronted an admittedly "narrow issue." *Id.* at ——, 120 S.Ct. at 2354. The case involved two independent state statutes working in tandem, not one statutory section as in *Jones* and *Castillo.* The first statute punishes possession of a firearm for an unlawful purpose by imprisonment for between five and ten years. *See id.* at ——, 120 S.Ct. at 2350. The second statute, known as a "hate crime" law, increases the sentencing range to between ten and twenty years if the trial judge finds, by a preponderance of the evidence, that the defendant "acted with a purpose to intimidate an individual or group of individuals because of race, color, gender, handicap, religion, sexual orientation, or ethnicity." *Id.* Apprendi, who had shot a rifle into the home of an African–American family, was charged in an indictment that made no reference to New Jersey's hate crime statute. Among other offenses, he plead guilty to possession of a firearm for an unlawful purpose. *See id.* After the trial court accepted the plea, the prosecutor filed a motion to enhance the

sentence pursuant to New Jersey's hate crime law. The judge held an evidentiary hearing and concluded by a preponderance of the evidence that the crime was motivated by racial bias. The judge consequently applied the hate crime enhancement and sentenced Apprendi to twelve years of imprisonment on the firearm charge. *See id.* at ——, 120 S.Ct. at 2352. The New Jersey Supreme Court affirmed.

Applying its newly established rule, the Supreme Court reversed by a five to four vote,[4] finding that New Jersey's hate crime law unconstitutionally increased the maximum sentence for the firearm charge based on facts found by the trial judge. In addition to the majority's admission that this holding is a "narrow" one, the concurring opinions and dissents in *Apprendi* clarify the limits of the new rule. Justice Thomas expresses his view that the Constitution requires a "broader rule" than the majority adopts. *id.* at ——, 120 S.Ct. at 2367 (Thomas, J., concurring). He contends that "each fact necessary" to determine the "kind, degree, or range of punishment" to which a defendant is subject must be treated as an element. *id.* at ——, 120 S.Ct. at 2368. In dissent, Justice O'Connor criticizes the majority's "seemingly bright line rule" for relying on the formal idea of an increase in the prescribed statutory maximum, which Congress can legislate around while effectively establishing an identical sentencing scheme. *See id.* at ——, 120 S.Ct. at 2388 (O'Connor, J., dissenting). Whether or not their criticism persuades the reader, Justices O'Connor and Thomas make clear that the majority establishes a narrow, bright line rule that turns exclusively on whether the relevant factor "increases the penalty ... beyond the prescribed statuto-

---

**4.** Five justices joined in the lead opinion in *Apprendi,* although Justices Scalia and Thomas also wrote concurrences that propose a broader constitutional rule than that of the lead opinion. Nonetheless, because Justices Scalia and Thomas "join the opinion of the Court in full," *See Apprendi,* —— U.S. at ——, 120 S.Ct. at 2367, this Court considers Justice Stevens' lead opinion to establish a rule supported by a majority vote of the justices.

ry maximum." *id.* at ——, 120 S.Ct. at 2362.

Because *Apprendi* is only three weeks old, the Court could not locate any federal decision applying the case to § 841. At least nine circuits, however, have considered § 841 in light of *Jones.* All uphold the pre-*Jones* rule, unanimous among the circuits, that drug type and quantity are sentencing factors.[5] Moreover, the Ninth Circuit has held for at least sixteen years that drug type and quantity are sentencing factors for the judge to decide. *See United States v. Sotelo–Rivera,* 931 F.2d 1317, 1319 (9th Cir.1991); *United States v. Klein,* 860 F.2d 1489, 1496 (9th Cir.1988) (citing *United States v. Wright,* 742 F.2d 1215, 1220 (9th Cir.1984)).

Of the post-*Jones* opinions, *United States v. Jackson,* 207 F.3d 910, 919 (7th Cir.2000), confronts the issue in the most direct manner. In *Jackson,* Chief Judge Posner adheres to Seventh Circuit precedent holding that drug quantity and amount are sentencing factors. Judge Posner stresses "a reason that is practical rather than traditional, although it may explain the tradition." *Jackson,* 207 F.3d at 921. The "practical" reason is that questions of drug type and quantity would deflect the jury's attention from "the question at once more fundamental to culpability and more manageable by a lay factfinder whether the defendant had distributed a forbidden substance." *Id.* Judge Posner notes that the Sentencing Guidelines are "too complicated to be applied by lay persons; even lawyers and judges cannot apply them without training and experience.

The Constitution does not require the impossible." *Id.; see also United States v. Kuhl,* 816 F.Supp. 623, 626 n. 4 (S.D.Cal. 1993) (criticizing the guidelines as overly complicated and confusing).

Notably, the Supreme Court recently vacated and remanded the Tenth Circuit's decision in *United States v. Jones,* 194 F.3d 1178 (10th Cir.1999) (*"Jones II "*), which held that, "[b]ecause [the Supreme Court's decision in] Jones 'suggests' rather than establishes a new principle of constitutional law, we adhere to the doctrine of stare decisis and decline to reexamine whether the penalty provisions of § 841(b)(1) violate the Fifth and Sixth Amendments." *Jones II,* 194 F.3d at 1186. The Supreme Court vacated the decision and "remanded to the . . . Tenth Circuit for further consideration in light of *Apprendi v. New Jersey,* —— U.S. ——, 120 S.Ct. 2348 (2000)." *Jones v. United States,* —— U.S. ——, 120 S.Ct. 2739, 147 L.Ed.2d 1002 (2000). With no clear pronouncement from the Supreme Court regarding the constitutionality of § 841, this Court is left, like the Tenth Circuit, to consider the issue "in light of" *Apprendi.* The Court holds that *Apprendi* does not render § 841 unconstitutional.

### (iii) Analysis of § 841

The Court stresses that, writing on a clean slate, it might find that drug type and amount are elements that must be proven to the jury. After all, whether a particular stash of drugs is attributable to a defendant could conceivably determine the difference between a five year sentence and life in prison under § 841(b).[6]

---

5. *See United States v. Grimaldo,* 214 F.3d 967, 974 (8th Cir.2000); *United States v. Jackson,* 207 F.3d 910 (7th Cir.2000); *United States v. Thomas,* 204 F.3d 381 (2d Cir.2000); *United States v. Rios–Quintero,* 204 F.3d 214 (5th Cir.2000); *United States v. Swiney,* 203 F.3d 397 (6th Cir.2000), *cert. denied,* —— U.S. ——, 120 S.Ct. 2678, 147 L.Ed.2d 288 (2000); *United States v. Smith,* No. 99–4454, 2000 WL 139250 (4th Cir. Feb.8, 2000) (unpublished); *United States v. Hester,* 199 F.3d 1287 (11th Cir.2000); *United States v. Jones,* 194 F.3d 1178 (10th Cir.1999), *reversed,* —— U.S. ——, 120 S.Ct. 2739, 147 L.Ed.2d 1002 (2000); *United States v. Williams,* 194 F.3d 100 (D.C.Cir.1999).

6. For example, the amount of drugs attributable to a defendant charged with conspiracy depends upon what is "foreseeable" to that defendant within the scope of the agreed illegal activity. *See* United States Sentencing Guidelines Manual § 1B1.3 application note 2 (1998). Thus, if a particular stash of drugs is large enough to subject the defendant to life

Such a disproportionate leap in the sentence should arguably require the highest form of procedural protections against fact-finding error. Nonetheless, given the limited role of this Court, the question is more precisely stated as follows: Do *Jones, Castillo,* and *Apprendi* overrule unanimous circuit precedent holding that § 841(b) constitutionally sets forth drug quantity and type as sentencing factors for the judge to decide? Because the answer to that question is no, the Court finds that drug type and quantity are sentencing factors that may be left for the trial judge to decide by a preponderance of the evidence.

Because *Apprendi* purports to establish the constitutional limits on Congress' power, the analysis logically begins by asking whether § 841 violates the rule in *Apprendi.* If it does not, then Congress' intent is determinative. *See Patterson v. New York,* 432 U.S. 197, 210, 97 S.Ct. 2319, 53 L.Ed.2d 281 (1977). *Apprendi* establishes that facts which *"increase* the prescribed range of penalties" must be treated as elements. *See Apprendi,* —— U.S. at ——, 120 S.Ct. at 2362 (emphasis added). Defendant argues that § 841 *determines* the maximum sentence based upon sentencing factors found by the judge—i.e., drug weigh and type. While Defendant urges that no relevant difference exists between a factor that "increases" the prescribed statutory maximum and one that "determines" that statutory maximum, the Court finds that the distinction is crucial, and underscores the different rationales of *Castillo* and *Apprendi.*

Defendant's statement of the rule relies on Justice Scalia's concurrence in *Apprendi,* which states that the Constitution establishes "the right to have a jury determine those facts that *determine* the maximum sentence the law allows." *id.* at ——, 120 S.Ct. at 2366 (Scalia, J., concurring). First, as a concurrence, Justice Scalia's opinion is not a binding state-

ment of the law. Second, Justice Scalia also joins in the concurrence of Justice Thomas, which proposes a rule that is "broader" than the rule of the majority. *See id.* at ——, 120 S.Ct. at 2367 (Thomas, J., concurring). It appears, therefore, that while Justices Scalia and Thomas may believe that the Constitution requires the rule articulated by Defendant, the majority rule, which binds this Court, is more narrow.

The Court's analysis in *Castillo* further supports the distinction between factors that increase the maximum sentence and factors that determine the maximum sentence. Like § 841, the statute in *Castillo* prescribes enhanced mandatory penalties based on a change in the characteristics of an element of the crime. In *Castillo,* the crime is possession of a firearm and the enhancement depends on the type of firearm. The crime in § 841 is possession of a controlled substance and the enhanced penalty depends on the type and quantity of the controlled substance. The issue with respect to these statutes is different than the narrow issue presented in *Apprendi,* in which a maximum penalty associated with the underlying offense charged in the indictment is enhanced at sentencing by reference to a fact unrelated to that offense as defined. *Cf.* Susan N. Herman, *The Tail that Wagged the Dog: Bifurcated Fact–Finding Under the Federal Sentencing Guidelines and the Limits of Dues Process,* 66 S. Cal. L.Rev. 289, 310 (1992) (distinguishing between sentencing based on uncharged conduct and offense-related conduct). The crucial realization is that the Court decided *Castillo* without reference to the constitutional limitation suggested in *Jones* and established in *Apprendi.* Rather it engaged in a statutory interpretation of Congress' intent and explicitly found that if Congress intended a sentencing factor "the matter need not be tried before a jury but may be left for the

imprisonment under § 841(b), the judge decides whether that amount of drugs is attributable to the defendant by finding whether

they were "foreseeable" within the scope of the defendant's agreement.

sentencing judge to decide." *See Castillo,* 120 S.Ct. at 2092. By finding that Congress' intent is dispositive, the *Castillo* case clearly implies that the statute in question does not violate the constitutional limits found in *Jones* and *Apprendi.* In other words, the statute in *Castillo* does not *"increase* the prescribed statutory maximum" sentence, it *determines* the maximum based on the qualities of a fact that is an element of the offense. Because § 841 operates in . exactly the same fashion, the rule in *Apprendi* does not require submission of drug type and quantity to the jury. Rather, as in *Castillo,* whether § 841(b) sets forth elements or sentencing factors is purely a question of congressional intent.

Defendant correctly concedes that § 841(b) is intended by Congress to set forth sentencing factors. The Ninth Circuit and other courts of appeals have unanimously held this view for several years. The government has taken this position in innumerable cases before this Court. Despite the pervasiveness of this conviction among the federal courts, Congress has never amended the statute to provide otherwise. The only rational interpretation of congressional idleness in the face of voluminous precedent that it has the power to set straight is to assume that Congress agrees. *See United States v. Evans,* 333 U.S. 483, 492, 68 S.Ct. 634, 92 L.Ed. 823 (1948) (holding that given Congress' "repeated failure to clarify [a penal statute], after experience had shown the need," there can be no "direction to the courts to do what Congress itself either refused or failed on notice to do upon so many occasions and importunities"). The Court is therefore bound by the unanimous view of the circuits unless and until the Ninth Circuit or the Supreme Court indicates otherwise. Accordingly, the Court finds that drug type and quantity under § 841 are sentencing factors that the judge may properly determine by a preponderance of the evidence.

## B. Motion to Dismiss the 8 U.S.C. § 1326 Indictment

Defendant argues that the Court should dismiss the indictment for being a deported alien found in the United States, in violation of 8 U.S.C. § 1326, because the prior deportation proceedings violated his due process rights. Defendant argues that the immigration judge ("IJ") misstated the law at the deportation hearing by claiming that he could not look ·behind Defendant's state conviction for possession of marijuana for sale, in violation of Cal. Health and Safety Code § 11359. Contrary to that statement, Defendant contends, the IJ must suppress evidence at a deportation hearing that was "obtained through an egregious violation of the Fourth Amendment." *See Orhorhaghe v. INS,* 38 F.3d 488, 493 (9th Cir.1994). For that reason, Defendant argues that the government may not use the deportation in a prosecution under § 1326. The Court rejects Defendant's argument.

In general, a defendant in a § 1326 prosecution may not attack the legality of his prior deportation. *See United States v. Villasenor–Cesar,* 114 F.3d 970, 972 n. 1 (9th Cir.1997) (holding that the lawfulness of the deportation is not an element of the offense); *United States v. Alvarado–Delgado,* 98 F.3d 492, 493 (9th Cir.1996) (same). Nevertheless, if and only if "the deportation proceeding was so procedurally flawed that it effectively eliminated the right of an alien to obtain judicial review," then the defendant may attack the deportation before trial and, if successful, preclude the government from relying on it. *Alvarado–Delgado,* 98 F.3d at 493 (citation omitted); *see also* 8 U.S.C. § 1326(d) (providing that a defendant may not attack the validity of the deportation order unless the defendant was deprived of the right to judicial review of that order); *United States v. Mendoza–Lopez,* 481 U.S. 828, 839, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987) (holding that the government may not rely on a deportation order if "defects

in [the deportation] proceeding foreclose judicial review of that proceeding").

██ However, the Ninth Circuit has repeatedly held that to challenge a deportation successfully, a defendant must do more than show that his rights were violated. Rather, "to challenge his prior deportation ..., [Defendant] must prove prejudice as a result of the error." *Alvarado–Delgado*, 98 F.3d at 493; *see also United States v. Leon–Leon*, 35 F.3d 1428, 1431–32 (9th Cir.1994). If the Ninth Circuit had not made this principle sufficiently clear, this Court also has espoused the principle in two published opinions. *See United States v. Esparza–Ponce*, 7 F.Supp.2d 1084, 1088 (S.D.Cal.1998); *United States v. Pantoja–Valderama*, No. 97–2050–R, 1997 WL 856119, at *4 (S.D.Cal. Nov.24, 1997), *aff'd,* 165 F.3d 919 (9th Cir.1998).

██ In addition to deprivation of the opportunity for judicial review, § 1326 allows collateral attack of a deportation order only if the defendant demonstrates (1) exhaustion of "any administrative remedies that may have been available to seek relief after the order," and (2) the fundamental unfairness of the IJ's order. *See* 8 U.S.C. § 1326(d).

██ Defendant's collateral attack on his deportation order fails for several reasons. First, there is no indication to the Court that the IJ's statement that he could not look behind the state conviction was untrue in the context of the hearing. Defendant does not claim to have raised an "egregious violation of the Fourth Amendment" at the deportation hearing. If the IJ's statement had been in response such an argument, it would have been a misstatement of the law. *See Orhorhaghe*, 38 F.3d at 493. According to Defendant, however, the IJ's statement followed Defendants protestations of innocence. As such, Defendant's own cited authority establishes that it was an accurate statement of the law. *See In re Cervantes*, Int. Dec. 3380, 1999 WL 332842, at n. 3 (BIA 1999) (holding that an IJ "may not go behind the conviction to determine the guilt or innocence of an alien").

Second, even if the IJ had misstated the law, this would not eliminate Defendant's right to obtain judicial review. Judicial error is not an uncommon occurrence, and, rather than foreclosing the right of review, is the very reason for filing an appeal. If Defendant disagreed with the IJ's deportation order, he should have sought review with the Board of Immigration Appeals.

Defendant's failure to appeal constitutes a third reason to deny his motion: Defendant has not exhausted his administrative remedies as required by § 1326(d). Defendant argues that his waiver of appeal cannot constitute failure to exhaust administrative remedies because it was not "considered and intelligent." *See United States v. Estrada–Torres*, 179 F.3d 776, 778 (9th Cir.1999) (holding that due process requires a "considered and intelligent" waiver of appeal). As the Court has noted, however, the IJ's statement that he could not look behind the conviction was accurate with respect to Defendant's claim of innocence. Moreover, even if the IJ had misstated the law, this would not render Defendant's waiver unintelligent. For example, Defendant does not dispute the government's contention that he was given notice of his right to appeal the IJ's deportation order. An alleged misstatement of immigration law by the IJ has no bearing on Defendant's ability or obligation to exhaust his administrative remedies.

Defendant also argues that prosecution for illegal reentry would violate his Sixth Amendment right to counsel, since he was not represented by an attorney in conjunction with the prior deportation. In proffering such an argument, Defendant relies on the principles articulated in *Baldasar v. Illinois*, 446 U.S. 222, 223–24, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980) (holding that a defendant's prior uncounseled misdemeanor conviction could not be used to enhance a subsequent conviction from a misdemeanor to a felony).

██ Defendant's reliance on *Baldasar*, however, is misplaced, as *Baldasar* was expressly overruled by *Nichols v. United*

*States,* 511 U.S. 738, 748, 114 S.Ct. 1921, 128 L.Ed.2d 745 (1994) ("Today we adhere to *Scott v. Illinois, supra,* and overrule *Baldasar*.").[7] Moreover, even assuming arguendo that *Baldasar* remains good law, its principles do not apply to the case at hand. In *Baldasar,* the Supreme Court held that a prior, uncounseled misdemeanor conviction [8] could not be used to enhance a subsequent misdemeanor conviction into a felony (punishable by imprisonment) because to do so would violate the defendant's Sixth Amendment right to counsel in the first action. *Baldasar,* 446 U.S. at 223, 228, 100 S.Ct. 1585. In the present case, however, an element of the crime for which Defendant has been indicted is a prior, uncounseled *civil* proceeding, not a criminal conviction. *See Ramirez v. INS,* 550 F.2d 560, 563 (9th Cir.1977) (a deportation hearing is a civil proceeding). Respondents at deportation hearings are not constitutionally entitled to have counsel provided. *See Perez v. INS,* 116 F.3d 405, 409 (9th Cir. 1997). Therefore, because Defendant had no right to counsel whatsoever to assist him with his administrative removal, using this prior, uncounseled deportation to subsequently "enhance" sentencing for a later violation would not run afoul of *Baldasar.*

Furthermore, the Ninth Circuit has already considered, and rejected, Defendant's argument that using an uncounseled deportation as an element of a § 1326 offense violates the Sixth Amendment. *See United States v. Gomez–Gutierrez,* 140 F.3d 1287, 1289 (9th Cir.1998) (holding that prior uncounseled deportation could be used in prosecution for illegal reentry); *United States v. Gasca–Kraft,* 522 F.2d 149, 152 (9th Cir.1975) (same), *overruled on other grounds by United States v. Mendoza–Lopez,* 481 U.S. 828, 834–35 n. 9, 107 S.Ct. 2148, 95 L.Ed.2d 772 (1987). Therefore, in light of this controlling precedent, Defendant's motion to dismiss the § 1326 charge is denied.

### C. Motion to Sever the Indictments

■ Having upheld the indictments, the Court now turns to the issue of whether they should be severed for trial. Defendant argues that the indictments should be severed due to the risk of unfair prejudice from the admission of evidence at a joint trial that would be excluded from separate trials. The Court agrees and severs the indictments for trial.

Rule 13 of the Federal Rules of Criminal Procedure provides that "[t]he court may order two or more indictments ... to be tried together if the offense ... could have been joined in a single indictment." Rule 8(a) permits joinder of offenses in an indictment when the offenses "are of the same or similar character or are based on the same act or transaction or on two or more acts or transactions connected together or constituting parts of a common scheme or plan." Fed.R.Crim.P. 8(a). Severance of joined offenses should be granted when joinder "allows evidence of other crimes to be introduced in a trial of charges with respect to which the evidence

---

**7.** Defendant insists that Justice Souter's concurring opinion in *Nichols* demonstrates that *Baldasar* was not overruled. *See Nichols,* 511 U.S. at 749, 114 S.Ct. 1921 (Souter, J., concurring) ("I do not share the Court's view that *Baldasar* ... has a holding that can be 'overrule[d],' ..."). Accordingly, Defendant urges that this Court narrowly confine *Nichols* to its limited holding and not interpret the case as having overruled *Baldasar.*

   This Court, however, declines to read *Nichols* so narrowly. As stated above, the five-justice majority in *Nichols* expressly stated its intention to overrule *Baldasar. See id.* at 748, 114 S.Ct. 1921. In reaching such a holding, the majority reasoned that the "degree of confusion" caused by the splintered *Baldasar* decision justified the Court's re-examination of the case. *See id.* at 746–48, 114 S.Ct. 1921. Given *Baldasar*'s confusing and elusive holding, this Court takes its cues from the *Nichols* majority, which attempted to provide clear guidance to the lower courts by expressly overruling *Baldasar.* Thus, given this guidance, this Court agrees that *Nichols* overruled *Baldasar.*

**8.** Baldasar's prior, uncounseled misdemeanor conviction did not violate the Sixth Amendment because no prison sentence was imposed. *See Baldasar,* 446 U.S. at 226, 100 S.Ct. 1585 (Marshall, J., concurring).

would otherwise be inadmissible." *United States v. Lewis,* 787 F.2d 1318, 1321 (9th Cir.1986).

Here, reentry of a deported alien and possession of a controlled substance are unrelated and independent crimes that happened to be detected by agents on the same date. In a prosecution for illegal reentry, evidence of drug dealing would be irrelevant and unfairly prejudicial to Defendant. To establish a violation of § 1326, the government must prove only that: (1) Defendant is an alien; (2) Defendant was deported; and (3) Defendant reentered the United States without the consent of the Immigration and Naturalization Service. *See* 9th Cir.Crim. Jury Instr. 9.5 (2000). Evidence of Defendant's alleged drug possession is not only irrelevant, it can only serve to cloud the juror's deliberations and prejudice them against Defendant. The Court therefore orders that the indictments shall be severed for trial.

## IV. Conclusion

For the reasons set forth above, the Court denies Defendant's motions to dismiss the indictments and grants Defendant's motion to sever the indictments for trial. The Court will continue to hold consolidated hearings for pretrial motions, but the charges in each of the two indictments will be tried independently.

IT IS SO ORDERED.